UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MATTHEW J. SZULIK, KYLE M. SZULIK,
and MICHAEL COLLEARY, in his capacity as
trustee of the Raymond W. Szulik Revocable Trust
dated December 5, 2007,

                                   Plaintiffs,

            -against-

JAMES S. TAGLIAFERRI, PATRICIA J.
CORNELL, and BARRY B. FEINER,

                                   Defendants.
-----------------------------------------------------------------x

12 Civ. 1827 (PKC)

MEMORANDUM
  AND ORDER
DENYING MOTION
TO RECONSIDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-21-13

P. KEVIN CASTEL, District Judge:

        In a Memorandum and Order dated August 21, 2013 (the "Order"), the Court granted in part and denied in part defendants' motion to dismiss plaintiff's Second Amended Complaint (the "SAC"). Szulik v. Tagliaferri, No. 12 Civ. 1827, 2013 WL 4494684 (Aug. 21, 2013).[1] Plaintiffs now move for reconsideration of the Court's limitation of the scope of the fraud claims, pursuant to Rule 60(b), Fed. R. Civ. P., and Local Civil Rule 6.3.

        Put simply, plaintiffs have plausibly and adequately alleged false statements and certain damages that foreseeably flow from those false statements. The false statements relate to the payment of compensation to plaintiffs' financial advisors for the entity, a thoroughbred horse racing operation, that was the subject of the investment. But plaintiffs have not adequately and plausibly alleged that all losses they suffered on the investment foreseeably flowed from the false

---

[1] Familiarity with the facts set forth in the Order is assumed. All capitalized terms and abbreviations have the same meaning here as they had there.

statements about compensation. Each of the four claims required, as a matter of loss causation or proximate cause, that the plaintiff plausibly and adequately allege that the particular losses claimed foreseeably flowed from the false statements. This plaintiffs have failed to do. As more fully explained below, plaintiffs' motion for reconsideration is denied.

I. LEGAL STANDARD

Motions for reconsideration are governed by Local Civil Rule 6.3 and Rule 60(b), Fed. R. Civ. P. A motion to reconsider is "addressed to the sound discretion of the district court[.]" See Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990). A motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided," Id. at 257.

Motions for reconsideration "should be granted only when the defendant identifies an intervening change of law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel of Tartikov, Inc. v. YLL Irrevocable Trust, __ F,3d __, 2013 WL 4609100, at *4 (2d Cir. Aug. 30, 2013) (citation and quotations omitted). As a preliminary matter, plaintiffs have not identified any intervening change of controlling law. Neither have plaintiffs relied on any new evidence. Thus, in order to

prevail on their motion, plaintiffs must show the need to correct clear error or prevent manifest injustice. See id.

II. ANALYSIS

A. Timeliness of Motion

The time limit for a motion for reconsideration is set forth in Rule 6.3 of the Local Civil Rules. That Rule provides:

> Unless otherwise provided by the Court or by statute or rule. . . a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment.

Local Civil Rule 6.3. The Court's Order was entered on August 21, 2013. Plaintiffs moved for reconsideration on September 9, 2013, apparently based on a view that the three-day extension of Rule 6(d), Fed. R. Civ. P. applied to their motion. (Pl.'s Reply Mem.1) Because any potential error appears to have been inadvertent, and because in any event the possible delay of three business days is de minimis, the Court will consider the motion timely. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (citations omitted).

B. The Court's Causation Analysis

On this motion, plaintiff challenges the limitation of the scope of four claims brought against defendants James S. Tagliaferri and Patricia J. Cornell.[2] (Pl.'s Mem. 2) Count

---

[2] The SAC also alleged claims against Barry B. Feiner. The Court's rulings on claims against Mr. Feiner are not challenged on this motion.

3

III alleged scheme liability under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j, and Rule 10b-5(a) and (c) promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. (SAC ¶¶ 367-77) Count IV alleged a primary violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5(b). (SAC ¶¶ 378-87) Count VII alleged a claim arising under the North Carolina Investment Advisers Act, N.C. Gen. Stat. § 78C-1 et seq. (SAC ¶¶ 396-401) Count VIII alleged a claim of "fraudulent concealment," apparently under North Carolina common law. (SAC ¶¶ 402-07; Pl.'s Mem. 2)

Under the federal securities laws, a securities fraud plaintiff must allege both transaction causation and loss causation. Lentell v. Merrill Lynch & Co. Inc., 396 F.3d 161, 172 (2d Cir. 2005). Transaction causation is analogous to reliance, and requires only "an allegation that but for the deceptive act, the plaintiff would not have entered into the securities transaction." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 171 (citing Lentell at 172). Thus, the "but for" causation required to show transaction causation is "not a difficult hurdle to clear" in a private fraud claim under § 10(b). Stoneridge at 171. Plaintiffs adequately and plausibly alleged transaction causation.

Loss causation, on the other hand, has been described "in terms of the tort-law concept of proximate cause, i.e., that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission[.]" Lentell, 396 F.3d at 172 (citation and quotations omitted). The loss causation inquiry "typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 96 (2d Cir. 2001). "Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by plaintiff." Lentell, 396 F.3d at 172

4

(citation and quotations omitted). "[A] misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk <u>concealed</u> by the misrepresentations and omissions alleged by a disappointed investor." <u>Id.</u> at 173 (emphasis in original).

In analyzing loss causation, this Court found that plaintiffs' SAC failed "to explain how the nondisclosure or omission of the 'kickbacks' diminished the value of the IEAH investments and resulted in a loss." <u>Szulik</u> at *19. The Court explained that plaintiffs' vague assertions that defendants "caused them to suffer damages by draining their assets and deceiving them into continuing to entrust their savings," <u>Id.</u> (citing SAC ¶¶ 377, 387), "more obviously alleged transaction causation, i.e. had plaintiffs known of the fraud, they would not have continued to invest with TAG VI." <u>Id.</u> In contrast, the Court found that plaintiffs did plausibly allege a loss "in being duped into paying full management fees while defendants, unbeknownst to them, were receiving fees from IEAH for the same investment." <u>Id.</u> at *20. Thus, the Court limited both of plaintiffs' fraud claims under Section 10(b) and Rule 10b-5 to losses resulting from false statements or omissions, i.e. the overpayment of management fees. <u>Id.</u> The Court subsequently applied the same limitation to plaintiffs' claim under the North Carolina Investment Advisers Act, N.C. Gen. Stat. § 78C-8, <u>Szulik</u> at *21, and plaintiff's fraudulent concealment claim under North Carolina state law, <u>id.</u> at *22.

C. <u>Federal Law Fraud Claims</u>

As an initial matter, the basis for plaintiffs' contention that this Court required "plaintiffs to plead that defendants' fraudulent conduct was the sole cause of their losses" is not disclosed in plaintiffs' submissions. (Pl.'s Mem. 7) (capitalization omitted) Plaintiffs fail to cite

5

any portion of the Order imposing such a requirement, and indeed no such requirement may be found in the loss causation discussion in the Order.

With respect to the federal fraud claims under Section 10(b) and Rule 10b-5, plaintiffs argue that the Court should not have ruled at the motion to dismiss phase on "what damages were not recoverable." (Pl.'s Mem. 7) But this Court's earlier ruling limited claims, not damages. Irrespective of any considerations relating to damages, liability cannot arise in the first instance where a plaintiff has failed to adequately allege a necessary element of a claim. It is undisputed that "[t]o state a claim for relief under § 10(b) and Rule 10b-5, plaintiffs must allege [. . .] that plaintiffs' reliance was the proximate cause of their injury." Lentell v. Merrill Lynch & Co., 396 F.3d at 172.

Particularly in the area of Securities Exchange Act-based private securities fraud claims, for which the PSLRA imposes a loss causation requirement, courts are required to carefully scrutinize the adequacy of pleadings. See Lentell at 172; 15 U.S.C. 78u-4(b). For instance, in ATSI Commc'ns v. Shaar Fund, Ltd., the court affirmed dismissal of a fraud claim for failure to adequately allege loss causation. 493 F.3d 87, 93 (2d Cir. 2007). The court found that the complaint failed to establish any causal connection between the defendant's misrepresentation that the defendant was an accredited investor and the plaintiff's claimed losses from a decline in value of its stock. Id. at 106-07. Further, the court specifically rejected the argument that the misrepresentation induced the plaintiff to enter into a transaction under the pretense that the defendants were "trustworthy, reputable[,] and long-term investors." Id. at 107. This proffered basis for loss causation was rejected because the court found it to merely represent "a paraphrased allegation of transaction causation." Id. (quoting Lentell at 174).

District courts routinely limit claims in part at the motion to dismiss phase based on a partial failure to adequately allege loss causation. See, e.g., In re Moody's Corp. Sec. Litig., 599 F. Supp.2d 493, 518 (S.D.N.Y. 2009) (dismissing a fraud claim against defendants insofar as it rested on certain alleged fraudulent statements); In re AOL Time Warner, Inc. Sec. Litig., 503 F.Supp. 2d 666, 680 (S.D.N.Y. 2007) (partially dismissing plaintiffs' Section 10 claim for failure to plead loss causation with respect to a specific audit statement); City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC, 423 F. Supp. 2d 348, 364 (S.D.N.Y. 2006) (granting motion to dismiss fraud claims brought under Section 10(b) based on one set of misrepresentations and violations but denying motion with respect to another set).

Plaintiffs' argument that misstatements and omissions relating to "kickbacks" created a foreseeable risk that plaintiffs would lose their entire investment in IEAH cannot be accepted. That result is foreclosed by the pleading principles set forth in Lentell, which "require both that the loss be foreseeable and that the loss be caused by the materialization of the concealed risk[.]" 396 F.3d at 173 (emphasis in original). If misstatements and omissions relating to any discrete allegations of wrongful conduct (such as the kickback scheme here) could always justify the full recovery of a lost investment, this would effectively obliterate the loss causation requirement, which, "as with the foreseeability limitation in tort[,] is intended to fix a legal limit on a person's responsibility, even for wrongful acts." Lentell, 396 F.3d at 174 (citation and quotations omitted).

Further, to the extent that plaintiffs allege that their investments in IEAH were overvalued at the time of purchase, such an argument invokes the concept of a "purchase value time disparity" between the purchase price paid and the "true value" of a security. This theory has been expressly rejected as a basis for proximate causation of an economic loss. Emergent

7

Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 198 (2d Cir. 2003). This is because "[s]uch an allegation—which is nothing more than a paraphrased allegation of transaction causation—explains why a particular investment was made, but does not speak to the relationship between the fraud and the loss of the investment." Lentell at 174.

Schuster v. Anderson, 413 F. Supp. 2d 983 (N.D. Iowa 2005), relied on by plaintiffs, is sharply distinguishable from the instant case. The Schuster defendants were alleged to have actually taken plaintiffs' entire capital investment and used it for purposes other than investment in the shares of the underlying company, which was the only purpose authorized in the relevant investment agreement. Id. at 994-95. Here, there is no allegation that defendants did not actually invest plaintiffs' capital in IEAH securities that were within the scope of the authority provided in the IMA—except, of course, insofar as that capital was taken as an undisclosed "double-counted" management fee.

The "churning" cases relied upon by plaintiffs are also inapposite. In such cases, a plaintiff alleges that his or her investment broker traded the plaintiff's account excessively in order to generate more per-trade commissions. While it is true that the practice of "[c]hurning, in and of itself, may be a deceptive and manipulative device under section 10(b)," Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983), plaintiffs here have alleged no such device. A churning case requires no allegation of misrepresentation or omission; rather, the churning itself is recognized independently as a deceptive device. Id. In the instant case, plaintiffs have claimed that alleged omissions by defendants materially misled plaintiffs and thus caused them damages. Thus, other Circuits' willingness to award damages based on the decline in value of purchased securities in "churning" cases fails to support plaintiffs' argument here.

D. <u>North Carolina Fraud Claims</u>

    1. Fraud Under North Carolina Investment Advisers Act

Under the North Carolina Investment Advisers Act (the "NCIAA"):

> It is unlawful for any person who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise[:]
>
> > (1) To employ any device, scheme, or artifice to defraud the other person, [and]
> >
> > (2) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person. . . .

N.C. Gen. Stat. § 78C-8. Plaintiffs allege that defendants violated the statute "by failing to disclose kickbacks and other payments from IEAH in exchange for investing the Szuliks' money." (SAC ¶ 399)

Only two North Carolina state court decisions have discussed the NCIAA, and neither court's analysis pertains to the issue of loss causation pleading requirements. <u>See</u> <u>State v. Clemmons</u>, 433 S.E. 2d 748, 752 (N.C. Ct. App. 1993) (noting in dicta that though the record contained insufficient evidence to support an indictment under the state's general fraud statute, there was sufficient evidence to support an indictment for an uncharged violation of the NCIAA); <u>Shareff v. Lakebound Fixed Return Fund, LLC</u>, No. 09 CVS 9983, 2013 WL 873782, at *5 (N.C. Super. Ct. Mar. 6, 2013) (dismissing a fraud claim under the NCIAA for failure to plead with sufficient particularity to state a claim under North Carolina Rule 9).

"In cases such as this one, in which state law controls and the governing principles are uncertain or ambiguous, we attempt to predict how the highest court of the state would resolve the uncertainty or ambiguity." <u>Caronia v. Philip Morris USA, Inc.</u>, 715 F.3d 417,

9

449 (2d Cir. 2013) (citing Travelers Insurance Co. v. 633 Third Associates, 14 F.3d 114, 119 (2d Cir.1994)). "In so doing, we give full weight to the decisions of the state's highest court, and we give due regard to the decisions of the state's lower courts." Id. (citations omitted). "We also remain 'free to consider all of the resources to which the highest court of the state could look, including decisions in other jurisdictions on the same or analogous issues[.]'" Id. (quoting Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir.1993)).

Far from repudiating the analysis of courts applying the federal securities laws in the context of a fraud claim, North Carolina courts have noted the substantial similarity between state securities laws and their federal analogues, and thus found federal securities case law to be instructive. For instance, North Carolina's general securities fraud statute "closely parallels" S.E.C. Rule 10b-5, 17 CFR § 240.10b-5. State v. Williams, 390 S.E.2d 746, 749 (N.C. Ct. App. 1990). Therefore, "[c]ases construing the federal rule are instructive when examining [North Carolina's] statute." State v. Davidson, 506 S.E.2d 743, 748 (N.C. Ct. App. 1998). Because the language of the North Carolina Investment Advisers Act is nearly identical to that of the federal Investment Advisers Act of 1940 (the "40 Act"), this same interpretive principle applies to fraud claims brought thereunder.[3] Compare 15 U.S.C. § 80b-6 with N.C. Gen. Stat. § 78C-8.

Thus, because North Carolina courts treat federal securities law as instructive in the interpretation of state securities laws, in the absence of any contradictory state authority the Court finds no clear error or manifest injustice with its application of federal loss causation analysis to plaintiffs' claim under the NCIAA.

---

[3] In turn, "[t]he provisions of § 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6, are substantially similar to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5. . . ." Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 35 n.1 (1979) (White, J. dissenting). Thus, the antifraud provisions of the 40 Act are generally interpreted consistently with those of Exchange Act Section 10(b) and Rule 10b-5 promulgated thereunder. See generally S.E.C. v. Capital Gains Research Bureau, 375 U.S. 180 (1963).

10

2. Fraudulent Concealment

Fraudulent concealment "is a form of fraudulent misrepresentation entitling the claimant to damages. . . ." Friedland v. Gales, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998). "To assert a claim for fraudulent concealment, there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose." Id. In addition to these requirements, fraudulent concealment claims are also required to satisfy the traditional elements of fraud under North Carolina law. Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP, 394 F. Supp. 2d 762, 767-68 (M.D.N.C. 2005) (citing Hunter v. Guardian Life Ins. Co. of Am., 593 S.E.2d 595, 598–99 (N.C. Ct. App. 2004)).

"The elements of a civil cause of action for fraud are (1) a false representation or concealment of a material fact (2) that is reasonably calculated to deceive (3) made with intent to deceive (4) which does in fact deceive and (5) results in damage to the injured party." Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus, No. COA12-1361, 2013 WL 5458617 (N.C. Ct. App. Oct. 1, 2013) (citation omitted). "[I]n order to survive a motion to dismiss pursuant to [North Carolina] Rule 12(b)(6), the complaint must allege with particularity all material facts and circumstances constituting the fraud, although intent and knowledge may be averred generally." Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) (citations omitted).

Plaintiffs argue that this Court erred in applying to their state law fraud claims the loss causation analysis discussed in connection with their federal fraud claims. Plaintiffs base their argument on the broad contention that "under North Carolina law, fraud claims do not have a loss causation element." (Pl. Mem. 3) (capitalization omitted). Contrasting federal securities fraud law with the law of fraud in North Carolina, plaintiffs suggest that, while a federal fraud claim requires a showing of both "transaction causation" and "loss causation," North Carolina

11

law requires only "proximate causation," which plaintiffs characterize as equivalent to "transaction causation." (Pl.'s Mem. 5) Plaintiffs urge that merely alleging "but for" causation, also known as factual causation, is sufficient to satisfy the "proximate cause" element of a North Carolina fraud claim.

The loss causation requirement applicable to federal law securities fraud claims is far from unique to federal law and is no different from the common law concept of "proximate cause" as applied in fraud cases. See Restatement (Second) of Torts § 548A (1977) ("A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance."); Grand v. Nacchio, 147 P.3d 763, 773 (Ariz. Ct. App. 2006) (causation in securities fraud requires a showing of both transaction causation and loss causation, and "[l]oss causation is nothing more than proximate cause"); OCM Principal Opportunities Fund v. CIBC World Markets Corp., 68 Cal. Rptr. 3d 828, 862 (Cal. Ct. App. 2007) ("the entitlement to damages requires the existence of proximate causation, that is, a causal link between the losses and the 'facts misrepresented'"); Kirkruff v. Wisegarver, 697 N.E.2d 406, 413 (Ill. App. Ct. 1998) (holding that to recover for misrepresentation in cases involving breach of fiduciary duty, plaintiffs must prove that the misrepresentation was both a cause-in-fact and proximate cause of the injury); Spreitzer v. Hawkeye State Bank, 779 N.W.2d 726, 740 (Iowa 2009) ("As with other torts, it is generally recognized the causation element of a fraud claim is composed of both factual and legal causation of the loss. . . Without legal causation, the chain of losses resulting from an investment would be virtually limitless.").

Plaintiffs cite three North Carolina decisions that they argue demonstrate that North Carolina courts require only a showing of "but for" causation at the pleading stage of a

12

fraud suit. In dicta in Jefferson Standard Life Ins. v. Guilford County, the Supreme Court of North Carolina explained that in order for legal fraud to be actionable, "there must be some causal connection between the fraud and the injury alleged, and some relevancy between them and the relief demanded." 38 S.E. 2d 519, 523 (N.C. 1946). However, because Jefferson Standard Life Ins. was resolved strictly on constitutional grounds, the court did not elaborate on the degree or character of the causal connection required. Id. at 524 ("When a transaction is in direct violation of the Constitution and laws, it is not necessary to invoke fraud [. . .] to establish its invalidity."). Shugar v. Gill, a civil suit for assault and battery, examined the propriety of a punitive damages award and is entirely inapposite to the issue of proximate cause pleading requirements. 277 S.E.2d 126, 131 (N.C. Ct. App. 1981).

In the third cited case, Hester v. Miller, the North Carolina Court of Appeals addressed the issue of proximate cause in the context of a negligence claim arising out of an automobile collision. 255 S.E.2d 318, 321 (N.C. App. 1979). The Court's brief decision concluded that the summary judgment movant had not established intervening negligence as a matter of law. Id. The case has little or nothing to do with the pleading requirements in a fraud action.

The traditional formulation of the common law requirement of proximate cause, indeed, does apply to a fraud claim under North Carolina law. See Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 471 (1986) (fraud claims require a showing "that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation."); Self v. Yelton, 688 S.E.2d 34, 38 (N.C. Ct. App. 2010) (an essential element of each of plaintiffs' fraud claims "is a showing that defendant proximately caused their damages"); Raleigh Flex Owner I, LLC v. MarketSmart Interactive, Inc., 1:09-CV-699, 2011 WL 923356, at

13

*12 (M.D.N.C. Mar. 7, 2011) (granting summary judgment against plaintiff's fraud claims because plaintiff "failed to offer any evidence that it suffered damages as a proximate result of reliance it placed on any false statements[. . .] as required by North Carolina law.").

North Carolina law requires more than an allegation of "but for" causation to properly allege proximate causation. See Cooper-Harris, Inc. v. Escalle, 200 S.E.2d 440, 442 (N.C. Ct. App. 1973) ("An event which is a 'but for' cause of another event-that is, a cause without which the second event would not have taken place-is not, necessarily, the proximate cause of the second event."); Strates Shows, Inc. v. Amusements of Am., Inc., 646 S.E.2d 418, 425 (N.C. Ct. App. 2007) ("while the illegal conduct by defendants may have been the cause-in-fact of plaintiff's legal fees and costs, it was not the 'proximate cause' of such fees and costs.") (citation omitted). It embraces the traditional common law formulation of limiting a defendant's liability to the foreseeable consequences of his or her actions. See Bumpers v. Cmty. Bank of N. Virginia, 747 S.E.2d 220, 234 (N.C. 2013) ("the crux of proximate cause is the foreseeability of an injury"); Williams v. Boulerice, 268 N.C. 62, 68 (1966) ("Foreseeability is an essential element of proximate cause.").

Plaintiffs make no mention of foreseeability in their complaint, and their allegations do not support a reasonable inference that the total loss of their investment in IEAH was a foreseeable consequence of their overpayment of investment management fees. The only specific allegation of damages made in their common law fraudulent concealment claim was that "[t]he Szuliks relied upon and acted upon Tagliaferri and Cornell's representations and concealment of facts and were harmed as a result." (SAC ¶ 407) The SAC states that defendants "skimmed millions of dollars off of" the IEAH investments, breaks out the total of $1.63 million in undisclosed "kickbacks" in detail, and notes that the "kickbacks" were collected

14

simultaneously with over $1.4 million in management fees. (SAC ¶ 128, 130-31) But nothing in the SAC suggests that, at the time the IEAH investments were made, the overpayment of investment management fees in the form of "kickbacks" would foreordain a total loss of the value of the investment. See SAC ¶¶ 125-63, 402-07. Thus, beyond the loss involved in the double payment of management fees, plaintiffs failed to adequately allege proximate cause as required under North Carolina law.

Plaintiff's reliance on Jacobs v. Physicians Weight Loss Center of America, Inc., 620 S.E. 2d 232 (N.C. Ct. App. 2005), is misplaced. In that case, a weight loss center contractually required physicians to forward prescriptions directly to a preferred pharmacy instead of given to patients. Id. at 234. Had patients been given their prescriptions, they would have been able to fill them more cheaply at a different pharmacy. Id. at 235. A class of plaintiffs sued the weight loss center for, among other things, actual and constructive fraud under North Carolina law. Id. The trial court granted partial summary judgment for the defendant on the constructive fraud claims of those class members who did not ask to take their prescription to a different pharmacy. Id. The Court of Appeals concluded that there was no evidence that patients were informed that they had a right to ask to have the prescription filled elsewhere. Id. at 237. In passing, the Court quoted Barber v. Woodmen of the World Life Ins. Society, 382 S.E.2d 340, 345 (N.C. Ct. App. 1989) (citation omitted), an appeal from a denial of a motion for a directed verdict, as noting that "[o]ur court has held that whether plaintiff's damages [are] the proximate result of defendant's actions is almost always a question of fact for the jury." Id. at 237. The issue presented on defendants' motions to this Court was not whether there was evidence sufficient to go to a jury but whether plaintiff had met the pleading requirements at the threshold of the action.

Plaintiffs also rely on Bear Hollow, L.L.C. v. Moberk, L.L.C., No. 5:05CV210, 2006 WL 1642126 (W.D.N.C. June 5, 2006), an action alleging common law fraud under North Carolina law in a real estate transaction. While not discussing the nature of the allegations, the district court noted that the amended complaint specifically "alleged special damages flowing as a direct and proximate result of the fraud." Id. at *10.[4] In contrast, there is nothing in the SAC characterizing plaintiffs' loss of the principal invested in IEAH as "a direct and proximate result" of defendants' failure to disclose the "kickback" arrangement.

Thus, because North Carolina fraud law itself requires a showing of not only "but for" causation but also traditional proximate cause, the Court finds no clear error or manifest injustice with its application of federal causation analysis to plaintiffs' North Carolina claims.

## CONCLUSION

As this Court concluded in the Order, on their third attempt to plead their claims, plaintiffs failed "to explain how the nondisclosure or omission of the 'kickbacks' diminished the value of the IEAH investments and resulted in a loss," to "plainly allege[] why the 'kickback' scheme forecasted or caused plaintiffs' losses," and to "allege how or why the nondisclosure of the 'kickbacks' 'concealed the circumstances that bear upon the loss suffered[.]'" Szulik, 2013 WL 4494684 at *19 (citing Lentell, 396 F.3d at 175). This was so even though the Court, as it was required to do on consideration of a motion to dismiss, "accept[ed] all factual allegations in the complaint as true and [drew] all reasonable inferences in plaintiffs' favor." Friedus v.

---

[4] In North Carolina, "special damages" are "damages which are the natural but not necessary result of the alleged wrongful act of the defendant." Oberhortzer v. Huffman, 234 N.C. 399 (1951). Such damages "must be pleaded with sufficient particularity to put the defendant on notice." Id.; see also N.C. Gen. Stat. 1A-1, Rule 9(g) ("When items of special damage are claimed each shall be averred.")

16

Barclays Bank PLC, __ F.3d __, 2013 WL 4405291, at *3 (2d Cir. Aug. 19, 2013) (citation omitted). A motion for reconsideration should not be granted where a party merely seeks reconsideration of issues already decided. Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir.1995). Because plaintiffs have failed to identify any clear error or manifest injustice in the Court's previous ruling, their motion for reconsideration must be denied.[5]

For the foregoing reasons, plaintiffs' motion to reconsider is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 21, 2013

---

[5] Plaintiffs' alternative request that they be permitted to recover the full amount of defendants' "kickbacks" need not be reached at this juncture. The issue may be raised in Final Pretrial Submissions.